PEOPLE v GUNNETT

Docket No. 112737. Submitted October 17, 1989, at Lansing. Decided
January 17, 1990. Leave to appeal denied, 434 Mich —.

Delbert J. and Judith L. Gunnett, husband and wife, were
charged with gross indecency with a person of the opposite sex
after they engaged in an act of fellatio in a public visiting room
at the State Prison of Southern Michigan. The Jackson Circuit
Court, Russell E. Noble, J., dismissed the charges, holding that
the statute prohibiting gross indecency between persons of
different sexes cannot apply to spouses since the state may not
regulate consensual intimacies between married persons. The
people appealed by leave granted, and the Court of Appeals
reversed, finding the statute constitutional as applied to the
facts of this case, and remanded for trial. 158 Mich App 420
(1987). Defendants filed a motion in the circuit court to dismiss
for lack of due diligence on the part of the prosecution and the
police in identifying witnesses present in the visiting room.
That motion was denied, but the court granted defendants'
motion for assistance in production of the witnesses. Seven
months later, defendants filed a new motion to dismiss based on
the prosecution's failure to produce the res gestae witnesses.
Following an evidentiary hearing at which the court found that
the prosecution failed to exercise due diligence in identifying
and locating any of the twenty to forty potential res gestae
witnesses, the court held that defendants would be denied a
fair trial and dismissed the charges. The people appealed,
claiming that the trial court erred in dismissing the charges
because defendants at no time made any showing that any of
the witnesses would have been material or favorable to the
defense, that the court should have deferred its decision on
defendants' motion until after a full trial, and that the res
gestae rule no longer requires that the prosecution act with due
diligence with respect to witnesses.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Automobile Insurance §§ 344, 348, 443, 444.
See the Index to Annotations under No-Fault Insurance; Other
Insurance; Subrogation.

1. According to testimony at the evidentiary hearing, absolutely no effort was made by the prosecution to investigate and acquire the names of the witnesses. Due diligence has always required that the prosecution take reasonable steps in locating res gestae witnesses. The court did not err in finding a lack of due diligence on the part of the prosecution.

2. The prosecution has the burden of establishing that its failure to exercise due diligence in the production of a res gestae witness did not adversely affect a defendant's right to a fair trial. The prosecution in this case failed to rebut the presumption of prejudice. The trial court did not err in finding that defendants were prejudiced.

3. The prosecution's claim that dismissal was an inappropriate remedy under the facts and that a trial is mandated is rejected. Because the court determined that the prosecution's attempts to identify the res gestae witnesses demonstrated a lack of due diligence and that nonproduction of material witnesses would prejudice the defendants, the inability of the prosecutor to cure the prejudice warranted dismissal.

Affirmed.

1. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE.

A res gestae witness endorsed by the prosecution must be produced if, through due diligence, production is possible; due diligence requires that the prosecution take reasonable steps in locating res gestae witnesses.

2. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE — QUESTIONS OF FACT.

Whether the prosecution exercised due diligence in attempting to locate res gestae witnesses is a factual issue, the determination of which by a trial court will not be set aside unless clearly erroneous (MCR 2.613[C]).

3. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE — PREJUDICE.

The prosecution has the burden of establishing that its failure to exercise due diligence in the production of a res gestae witness did not adversely affect a defendant's right to a fair trial.

4. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE — EVIDENTIARY HEARINGS.

The exact point during trial when hearings are to be held to decide whether a witness is in fact a res gestae witness and whether due diligence has been exercised in attempting to

produce the res gestae witness is within the discretion of the trial court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joe Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

*James Sterling Lawrence,* for defendants.

Before: Danhof, C.J., and MacKenzie and R. E. Robinson,* JJ.

Per Curiam. Defendants were charged with gross indecency with a person of the opposite sex in violation of MCL 750.338b; MSA 28.570(2). The trial court granted defendants' motion to dismiss, finding the statute unconstitutional as applied to husband and wife. This Court reversed, finding the statute constitutional as applied to the facts of the case, and remanded for trial. *People v Gunnett,* 158 Mich App 420; 404 NW2d 627 (1987). Upon reinstatement of the charges, the trial court granted defendants' motion to dismiss for the prosecution's failure to exercise due diligence in identifying res gestae witnesses. The people appeal that dismissal by right. We affirm.

This Court previously described the incident from which defendants' charges arose:

> Testimony at the preliminary examination disclosed that the shift commander at the State Prison of Southern Michigan was observing the visiting room of the prison through a one-way mirror when he saw the defendants engaging in the alleged sex act. Defendants were sitting side-by-side on chairs approximately fifteen feet from the guard when Delbert Gunnett slid his hand

---

* Former circuit court judge, sitting on the Court of Appeals by assignment.

down, unbuttoned the left side of his bib overalls, and, with his hand inside the overalls, pushed his penis up through his "fly." Judith Gunnett then took hold of his penis with her hand, lowered her head, and performed an act of fellatio on Delbert Gunnett. There were twenty to forty other people in the well-lit visiting room at the time, including two to eight children. The sexual act continued for about two minutes until the shift commander was able to contact another guard who entered the visiting area and terminated the visit. [*Gunnett, supra,* pp 422-423].

Following remand by this Court, defendants moved to dismiss the charges for lack of due diligence on the part of the prosecution and the police in identifying witnesses present in the visiting room. The trial court denied defendants' motion to dismiss, but granted defendants' motion for assistance in production of the witnesses. Seven months later, defendants filed a new motion to dismiss based on the prosecution's failure to produce the res gestae witnesses.

Testimony at the evidentiary hearing revealed that various records are made regarding a visit to a prisoner, including a visitor pass, a prisoner's visitor card, a visiting room record, and a block pass. The visitor pass and visiting room record are retained by the prison for 1½ to 2 years. The prisoner's visitor card is retained as long as the prisoner remains an inmate.

The incident in this case occurred on June 8, 1985. Shortly after his arrest on the charges, defendant Delbert Gunnett received, upon a Freedom of Information Act request, a copy of a visiting room record for June 8, 1985, after the identities of the other inmates were blackened out in accordance with prison policy.

Assistant prosecutor Edward Grant testified that

in early September, 1985, he was concerned with possible res gestae witnesses in the visiting room and contacted investigating officer Robert Piziali to determine whether the prison could identify these witnesses. Piziali had been previously advised by a prison employee that inspection of the inmate visitor cards and trouble log would identify the names of those persons in the visiting room on June 8, 1985. Piziali did not do this, however, because the inmate cards would not indicate the time of the visit but only the date. Prior to the arraignment in September, 1985, Piziali informed Grant that he was unable to identify the other witnesses because the records had been destroyed. Grant did not conduct any investigation between the arraignment and the initial dismissal in December, 1985. Grant felt that such an investigation was outside the scope of his prosecutorial immunity. Neither Grant nor Piziali ever inquired as to what documents were generated when a prisoner had a visit.

Subsequent to reinstatement in 1987, Grant received a copy of defendant's blackened-out visiting room record. Grant contacted the prison and was told that visiting records did exist and that his prior information was incorrect, but that various records were destroyed when a pipe burst. Grant did not confirm what records had been destroyed and refused to inspect the inmate cards, believing it was unreasonable.

Following the evidentiary hearing, the trial court found that the prosecution and the police failed to exercise due diligence in identifying and locating any of the twenty to forty potential res gestae witnesses. As a result, the trial court held that defendants would be denied a fair trial and dismissed the charges.

On appeal, the prosecution claims that the trial

court erred in dismissing the charges because defendants at no time made any showing that any of the witnesses would have been material or favorable to the defense. The prosecution argues that the court should have deferred its decision on defendants' motion until after a full trial and that the res gestae rule no longer requires that the prosecution act with due diligence with respect to witnesses. We disagree.

Prior to its amendment in 1986, MCL 767.40; MSA 28.980 required the prosecution to endorse and produce all res gestae witnesses. Effective July 1, 1986, the amendment to the statute deleted the witness endorsement requirement and added MCL 767.40a; MSA 28.980(1), which provides in pertinent part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.
>
> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.
>
> * * *
>
> (5) The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs. If the prosecuting attorney objects to a request by the defendant on the grounds that it is unreasonable, the prosecuting attorney shall file a pretrial motion before the court to hold a hearing to determine the reasonableness of the request.

In this case, the parties do not dispute that the twenty to forty people present in the visiting room are res gestae witnesses. Rather, the parties dispute whether the prosecution failed to exercise due diligence or provide reasonable assistance to identify the witnesses, and whether such failure resulted in sufficient prejudice to warrant dismissal.

Although there is some question as to whether the prosecution is still required to exercise due diligence under the new amended statutes, *People v Calhoun,* 178 Mich App 517, 522; 444 NW2d 232 (1989), we find that due diligence has always required that the prosecution take reasonable steps in locating res gestae witnesses, *People v Cummings,* 171 Mich App 577, 585; 430 NW2d 790 (1988). Clearly, in this case, the prosecution did not provide even reasonable assistance to defendants in locating the witnesses. In addition, defendants were not asking the prosecution to produce the res gestae witnesses, only to use due diligence to provide their identities.

Whether due diligence was exercised is a factual issue, *People v Pearson,* 404 Mich 698, 721; 273 NW2d 856 (1979), and such fact-finding by the trial court will not be set aside unless clearly erroneous. MCR 2.613(C); *In re Miller,* 433 Mich 331; 445 NW2d 161 (1989). Based on the testimony at the evidentiary hearing, absolutely no effort was made to investigate and acquire the names of the witnesses. Accordingly, the trial court did not err in finding a lack of due diligence on the part of the prosecution

The prosecution also claims that the trial court erred in dismissing the case because defendants failed to demonstrate that the missing witnesses' testimony would be material or favorable. The prosecution relies on *United States v Valenzuela-*

*Bernal,* 458 US 858; 102 S Ct 3440; 73 L Ed 2d 1193 (1982). *Valenzuela-Bernal,* however, would not apply to the state law issue of prejudice resulting from lack of due diligence, but only to defendants' due process claims. Consequently, the trial court did not err in finding that defendants were prejudiced. Testimony at the preliminary examination revealed that of the twenty to forty witnesses in the visiting room, some were as close as five to eight feet from defendants. Clearly defendants could not reasonably proceed to trial without the witnesses. Consequently, because the prosecution failed to rebut a presumption of prejudice, the trial court did not err in finding that defendants were prejudiced. See *People v Pearson, supra* at 725-726.

The prosecution's final claim is that the trial court erred in dismissing the case. The prosecution argues that it was an inappropriate remedy under the facts. The prosecution, relying on *Pearson, supra,* asserts that a trial is mandated. We disagree. In *Pearson,* the Supreme Court, desirous of preventing numerous appeals, established preliminary procedures to resolve controversies under the previous res gestae statute. *Pearson* and other cases dealing with appropriate remedies for the resulting prejudice to a defendant for failure to produce res gestae witnesses had a different procedural posture than is present here. The Court in *Pearson* dealt with posttrial appeals where the prejudice could be cured by a new trial or appropriate jury instructions. The remedy for nonconformance with the old statute was a remand for an evidentiary hearing. *Pearson, supra; People v Robinson,* 390 Mich 629, 633-634; 213 NW2d 106 (1973). At such a hearing, the prosecutor was either to produce the witness or detail why he could not produce the witness and explain why he

did not initially endorse and produce the witness at trial. *Robinson, supra.* If the witness was produced at the hearing, the court was to determine if the defendant had been prejudiced by the absence of the witness at trial. *Pearson, supra.*

In this case, however, the determination of prejudice occurred prior to trial. Since the trial court determined that the prosecutor's attempts to identify the res gestae witnesses demonstrated a lack of due diligence and that nonproduction of material witnesses would prejudice the defendants, the inability of the prosecutor to cure the prejudice warranted dismissal. See, e.g., *People v Kenneth Smith,* 143 Mich App 122; 371 NW2d 496 (1985). In addition, in *Pearson, supra,* 404 Mich 721, n 4, the Supreme Court noted that the due diligence hearing may be held at any time within the court's discretion. Accordingly, we find that the trial court properly dismissed this case.

Affirmed.